**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TAMECA HOBBS,<br><br>                    Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF LABOR OFFICE OF THE SOLICITOR OF LABOR, *et al.*,<br><br>                    Defendants. | Civ. Action No. 22-00956 (GC)<br><br>**OPINION** |

**CASTNER, District Judge:**

This matter comes before the Court on two motions to dismiss the Complaint of *pro se* Plaintiff Tameca Hobbs ("Plaintiff"), which sets forth claims for violations of federal law and the U.S. Constitution, arising from Plaintiff's attempts to secure employment and a prior lawsuit filed in the Eastern District of Pennsylvania. The United States Department of Labor ("USDOL"), the United States Department of Justice ("USDOJ"), and Donna Scheel (the "Federal Defendants") move to dismiss pursuant to Rule 12(b)(6). Similarly, the State of New Jersey filed a separate motion to dismiss on the grounds that Plaintiff fails to state a claim. For the reasons set forth herein, the motions to dismiss are **GRANTED**; Plaintiff's claims are dismissed without prejudice.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is a former employee of the USDOL, where she worked for the Veterans Employment & Training Service ("VETS") program from October 2007 to August 2014 in Trenton, New Jersey. *See* Complaint ("Compl.") ¶ 13, ECF No. 1. As a USDOL employee, Plaintiff worked

1

under the supervision of her manager, Defendant Donna Scheel. *Id.* On or around September 19, 2013, Plaintiff notified a union representative that she was being subject to harassment and discrimination by Ms. Scheel. *Id.* ¶ 14. According to Plaintiff, Ms. Scheel had called Plaintiff a "Chicken Shit" and made certain negative comments about African Americans. *Id.* Plaintiff alleges that her complaint to the union representative prompted Ms. Scheel to engage in "a set of retaliatory and illegal actions" up to and beyond Plaintiff's ultimate resignation from the USDOL in 2014. *Id.* ¶¶ 14, 44.

In September 2015, when seeking employment elsewhere, Plaintiff received a call from a manager at a temporary hiring agency inquiring about whether Plaintiff had assaulted someone when working for the USDOL. *Id.* ¶ 15. Subsequently, through conversations with Ms. Scheel's former secretary, Plaintiff learned that Ms. Scheel had "told the State of New Jersey [Plaintiff] was not a veteran" and that Ms. Scheel "was Blacklisting her from getting jobs." *Id.* ¶ 16. Thereafter, Plaintiff filed an employment discrimination lawsuit against Ms. Scheel and others after years of struggling to secure full-time employment. *Id.* ¶ 18.

### A. Plaintiff's Prior Lawsuit

On December 5, 2017, Plaintiff filed a lawsuit in the Eastern District of Pennsylvania against Ms. Scheel, the USDOL, the State of New Jersey, the Philadelphia Mental Health Care Corporation, the City of Philadelphia, and certain employees of the City of Philadelphia (the "E.D. Pa. Action"). *Id.* ¶ 18; Civ. No. 17-5437 (E.D. Pa.). As in the present action, in that lawsuit, Plaintiff alleged, among other things, that Ms. Scheel and the USDOL had discriminated against Plaintiff because of her race and had told the City of Philadelphia that Plaintiff was bipolar, mentally unfit to work, and

2

violent. *See* Civ. No. 17-5437 (E.D. Pa.), ECF No. 1.¹

According to Plaintiff, she was subjected to additional wrongs in the course of the litigation. On April 23, 2018, Plaintiff alleges that her attorney was "unethically intimidated" by attorneys representing Ms. Scheel and the USDOL to amend the original complaint in the action. *See* Compl. ¶ 20. Plaintiff charges that she was not notified about the amendment. *Id.* Plaintiff also alleges that she was "never given an opportunity to read, review, or dispute" a particular certification filed in connection with a motion to substitute the United States as a defendant in place of Ms. Scheel. *Id.* ¶ 25. Plaintiff claims that the certification was "accepted by the Federal Court," despite her lack of opportunity to review or respond. *Id.* ¶ 26.

The filing to which Plaintiff refers was submitted by United States Attorney William McSwain, certifying that Ms. Scheel was acting within the scope of her employment when the wrongs alleged by Plaintiff occurred. *See* Civ. No. 17-5437 (E.D. Pa.), ECF No. 22 at 9 ("McSwain Certification"). On December 7, 2018, relying upon the McSwain Certification, the district court substituted the United States for Ms. Scheel and dismissed Plaintiff's defamation claims against the United States pursuant to the Federal Tort Claims Act. *See* Civ. No. 17-5437 (E.D. Pa.), ECF No. 32. Plaintiff voluntarily dismissed her claims against the remaining defendants on May 23, 2019. *See* Civ. No. 17-5437 (E.D. Pa.), ECF No. 43.

### B. Plaintiff's Present Lawsuit

After the dismissal of the E.D. Pa. Action, Plaintiff continued to pursue other avenues of legal action, eventually culminating in the present suit. According to Plaintiff, in August 2019, she filed

---

¹ Because Plaintiff explicitly mentions and relies upon certain filings from her prior lawsuit in the Eastern District of Pennsylvania, the Court has reviewed those documents and refers to them here. *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 529 (D.N.J. 2004) ("A document integral to or explicitly relied on in the complaint may be considered 'without converting the motion to dismiss into one for summary judgment.'") (internal quotations and citation omitted).

a "demand letter" with the State of New Jersey, inquiring as to whether she "had done something wrong or illegal." *See* Compl. ¶ 31. In September 2019, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") complaint as to Burlington County, New Jersey, allegedly a former employer, which was rejected. *Id.* ¶ 33. And, in October 2019, Plaintiff called a USDOJ attorney who had worked on the E.D. Pa. Action, asking for an "explanation of her denial of rights." *Id.* ¶ 36.

Plaintiff alleges that, after securing employment with the City of Philadelphia in October 2019, she attempted to retain legal counsel throughout 2020 and 2021 in order to revive her claims set forth in the E.D. Pa. Action but was unsuccessful in doing so. *Id.* ¶ 39. On July 27, 2021, Plaintiff filed an SF-95 with the USDOL and USDOJ, seeking lost wages, benefits, and compensation. *Id.* ¶ 41. On September 6, 2021, Plaintiff filed a complaint with the USDOJ Office of Professional Responsibility, seeking an investigation into the attorneys involved in the E.D. Pa. Action. *Id.* ¶ 42. In the complaint, Plaintiff also sought assistance from an attorney, as she was supposedly concerned that she had been accused of assault during her time at the USDOL and that she was being investigated for a crime in Burlington County, New Jersey. *Id.*

Plaintiff's present action attempts to revive several claims previously made in the E.D. Pa. Action, while asserting additional purported wrongs arising from the prior litigation itself. First, Plaintiff claims she was denied due process of law with respect to her "employment rights" as she unsuccessfully sought employment in New Jersey from 2015 through 2018, after her resignation from the USDOL in August 2014. *Id.* ¶ 44. In addition, Plaintiff asserts that her due process rights "were discarded" by the December 7, 2018 ruling in the E.D. Pa. Action in that she never received the McSwain Certification and was not "given an unbiased tribunal" to contest Ms. Scheel's accusations to potential employers that Plaintiff was "incompetent, Bipolar, not a veteran, and had assaulted someone." *Id.* ¶ 46. Second, Plaintiff claims that she was deprived of her right to a speedy trail and

right to an attorney with respect to the assault accusations that have been allegedly levied against her. *Id.* ¶¶ 53–61. Third, Plaintiff claims that she was discriminated against in violation of her civil rights and employment discrimination laws by virtue of having been allegedly labeled "an African American woman who is an incompetent troublemaker with a criminal record and a Bipolar person who need not work." *Id.* ¶¶ 62–66. Fourth, Plaintiff claims that "the State of New Jersey was acting illegally and discriminating by removing Plaintiff's Veteran Preferences Status in employment opportunities throughout New Jersey" in 2016 through 2018, despite Plaintiff having been awarded veterans preference status many years prior. *Id.* ¶¶ 67–70. Fifth, Plaintiff claims that the USDOL and USDOJ acted unlawfully in allowing Ms. Scheel to discriminate against her and for failing to investigate the attorneys who represented Ms. Scheel and the USDOL in the E.D. Pa. action. *Id.* ¶¶ 75–83. Finally, Plaintiff claims the USDOL violated the Administrative Procedure Act as "they provided no notice to Plaintiff of the actions to remove her veterans benefits from employment hiring and subjected her to abuse of their power by illegal blacklisting." *Id.* ¶ 85.

### C. Procedural History

On February 22, 2022, Plaintiff filed a six-count Complaint, asserting the following causes of action: (I) violations of the Fifth and Fourteenth Amendments of the U.S. Constitution as to all Defendants; (II) violations of the Sixth Amendment of the U.S. Constitution as to all Defendants; (III) violations of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990 (ADA) and deprivation of civil rights under 42 U.S.C. § 1983 as to all Defendants; (IV) violations of the Uniformed Services Employment & Reemployment Act of 1994 (USERRA) as to the State of New Jersey; (V) claims pursuant to the Federal Tort Claims Act as to the USDOL and USDOJ; and (VI) violations of the Administrative Procedure Act as to the USDOL. *See generally* Compl. The State of New Jersey moved to dismiss the claims against it on April 7, 2022. *See* ECF No. 10 ("State Mot."). Plaintiff opposed the motion on April 25, 2022. *See* ECF No. 13 ("Pl. State

Opp."). The Federal Defendants moved to dismiss on June 15, 2022. *See* ECF No. 21 ("Fed. Mot."). Plaintiff opposed that motion on June 27, 2022. *See* ECF No. 22 ("Pl. Fed. Opp."). The Federal Defendants filed a reply on July 13, 2022. *See* ECF No. 23 ("Fed. Reply").

## II.   LEGAL STANDARD

Courts undertake a three-part analysis when considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[M]ere restatements of the elements of [a] claim[ ] . . . are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (quotation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

Where, as here, a litigant is proceeding *pro se*, all filings are "to be liberally construed . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations and citations omitted). Nevertheless, "*pro se* litigants still must allege sufficient facts in

their complaints to support a claim." *Owens v. Armstrong*, 171 F. Supp. 3d 316, 328 (D.N.J. 2016) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)).

## III.   DISCUSSION

Plaintiff's Complaint, although often unclear as to the exact circumstances giving rise to the various causes of action asserted, sets forth a series of perceived wrongs related to Plaintiff's prolonged search for employment following her departure from the USDOL and arising from the E.D. Pa. Action, which she initiated in response to having been allegedly "blacklisted" from the local employment market by her former manager at the USDOL.[2] The Federal Defendants and the State of New Jersey both, separately, move to dismiss the Complaint pursuant to Rule 12(b)(6).

To begin, the Court finds that Plaintiff's claims for constitutional violations pursuant to 42 U.S.C. § 1983 (Counts I, II, & III) as to the State of New Jersey fail and must be dismissed. Under section 1983, a "plaintiff [must] prove two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011). Notably, however, "a State is not a 'person' within the meaning of § 1983," as, absent waiver of immunity, "[t]he Eleventh Amendment bars such suits." *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–66 (1989). Here, Plaintiff has failed to name an individual state actor who may be subject to section 1983 liability, and thus each of her section 1983 claims are facially deficient. That said, as explained *infra*, Plaintiff will have the opportunity to amend her Complaint consistent with the dictates of this Opinion. Should Plaintiff wish to do so, she may reassert her section 1983 claims in an amended complaint against a proper

---

[2] Plaintiff sought appointment of *pro bono* counsel on September 8, 2022. *See* ECF No. 25. The Magistrate Judge denied Plaintiff's motion on October 27, 2022, finding that because Plaintiff had been denied *in forma pauperis* status, Plaintiff did not qualify for *pro bono* counsel in this case. *See* ECF No. 28.

defendant, if one exists. In addition, "a section 1983 arising in New Jersey has a two-year statute of limitations," see *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010), and therefore, any potential amendment should account for the applicable limitations period.

Turning to the remainder of Plaintiff's Complaint, the Court addresses each count in the order asserted. Because the causes of action set forth lack a sufficient basis in fact, Plaintiff's claims are dismissed.

### A. Count I: Due Process

Plaintiff alleges that her due process rights were violated (1) through Ms. Scheel allegedly communicating to Plaintiff's prospective employers that she had assaulted someone and was unfit for employment and (2) as a result of her allegedly not having had the opportunity to review the McSwain Certification in the E.D. Pa. Action and her disagreement with the outcome of that lawsuit. *See* Compl. ¶ 43–52. Neither allegation supports a plausible due process claim.

First, Plaintiff fails to allege sufficient facts to support either a substantive or procedural due process claim arising from Ms. Scheel's allegedly false statements to prospective employers. "To prevail on a substantive due process claim, 'a plaintiff must establish as a threshold matter that he has a protected property interest to which . . . due process protection applies.'" *Barnett v. Penn Hills Sch. Dist.*, 705 F. App'x 71, 74 (3d Cir. 2017) (quoting *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139–40 (3d Cir. 2000)). However, the Third Circuit "has held explicitly that public employment is not a fundamental right entitled to substantive due process protection." *Hill v. Borough of Kutztown*, 455 F.3d 225, 235, n.12 (3d Cir. 2006) (citing *Nicholas*, 227 F.3d at 142–43). Further, the Third Circuit has also squarely held that "reputational injury that decreased [one's] 'ability to earn a living,'" through defamatory statements or otherwise, does "not suffice to support a substantive due process claim." *See id.* (quoting *See Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399–404 (3d Cir. 2000)). As such, Plaintiff fails to state a claim for violation of her substantive due

process rights.

As for a procedural due process claim, "reputation *alone* is not an interest protected by the Due Process Clause." *Hill*, 455 F.3d at 236 (quoting *Versarge v. Township of Clinton, New Jersey*, 984 F.2d 1359, 1371 (3d Cir. 1993)). "Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Id.* (citing *Paul v. Davis,* 424 U.S. 693, 701 (1976)). "In the public employment context, the 'stigma-plus' test has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest." *Id.* (quoting *Codd v. Velger,* 429 U.S. 624, 628 (1977)). Importantly, however, the Third Circuit has "previously found allegations of 'possible loss of future employment opportunities,' *Clark v. Twp. of Falls,* 890 F.2d 611, 620 (3d Cir.1989), and even outright 'financial harm,' *Sturm v. Clark,* 835 F.2d 1009, 1013 (3d Cir.1987), to be insufficient to satisfy the 'some additional right or interest' requirement." *Simpson v. Nicklas*, 500 F. App'x 185, 188 (3d Cir. 2012). Here, Plaintiff alleges that Ms. Scheel's false statements were made to prospective employers after her resignation from the USDOL. Plaintiff does not allege that the statements were made in connection with any termination from employment and, in fact, Plaintiff vehemently denies that any termination occurred. *See* Pl. Fed. Opp. at 2–3. Although Plaintiff may have suffered a reputational injury, Plaintiff fails to establish the "deprivation of some additional right or interest" to state a claim for a procedural due process violation under the stigma-plus test. *See Simpson*, 500 F. App'x at 188.

Second, Plaintiff's Complaint abounds with allegations regarding the McSwain Certification, filed on May 4, 2018 in the E.D. Pa. Action. Because Plaintiff's claims arise out of and rely upon this document, for purposes of these motions, the Court has reviewed its contents, which are publicly available. *See* Civ. No. 17-5437 (E.D. Pa.), ECF No. 22 at 9. To be clear, the document merely

certifies that Ms. Scheel acted within the scope of her employment with respect to the allegations made against her by Plaintiff in the E.D. Pa. Action. *See id.* Plaintiff's conclusory allegations and speculation about the contents of the certification are therefore groundless and not entitled to a presumption of truth. *See Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (noting that "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'") (citation omitted). Moreover, Plaintiff's claim that she was never afforded the opportunity to review or respond to the McSwain Certification is plainly contradicted by the record in the E.D. Pa. Action, which shows that Plaintiff filed a response in opposition on May 31, 2018. *See* Civ. No. 17-5437 (E.D. Pa.), ECF No. 27, 28. To the extent Plaintiff asserts a due process violation arising from a decision rendered in the E.D. Pa. Action, this Court is not an appropriate venue to challenge any such decision. Indeed, that is the purpose of the appellate process. Accordingly, Plaintiff's due process claims against all Defendants are dismissed.

### B. Count II: Sixth Amendment

Plaintiff lists a series of instances in which she has purportedly been accused of assault or notified that she had been accused of assault. *See* Compl. ¶ 60. Due to these accusations, and without an attorney to represent her, Plaintiff asserts that her Sixth Amendment right to a speedy trial and her Sixth Amendment right to an attorney have been violated. *See id.* ¶¶ 53–61. However, noticeably absent from Plaintiff's allegations is any indication that she has been formally charged or arrested in relation to these accusations.

Under the Sixth Amendment, "[s]peedy trial rights apply only after the defendant has been 'indicted, arrested, or otherwise officially accused,'"—that is, subject to "a formal [federal] criminal charge." *See United States v. Rose*, 365 F. App'x 384, 388–89 (3d Cir. 2010) (quoting *United States v. MacDonald*, 456 U.S. 1, 6 (1982)). As for the "Sixth Amendment right to counsel," that right

"attaches only after the initiation of adversary proceedings." *United States v. Diehl-Armstrong*, 504 F. App'x 152, 156 (3d Cir. 2012) (citing *Texas v. Cobb*, 532 U.S. 162, 167–68 (2001)); *see United States v. Berryman*, 322 F. App'x 216, 223 (3d Cir. 2009) ("A defendant's Sixth Amendment right to counsel attaches to a certain charge when the prosecution of that charge commences."). Because Plaintiff does not allege she has been indicted, arrested, or otherwise formally accused or criminally prosecuted in relation to the various assault accusations, Plaintiff cannot state a claim under the Sixth Amendment for either a speedy trial right or right to counsel violation.

To the extent Plaintiff intended to assert a right to counsel in the present matter, "there is no constitution[al] or statutory right to appointed counsel in civil cases." *Young v. Sch. Dist. of Phila.*, 427 F. App'x 150, 153 (3d Cir. 2011) (citing *Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997)). Further, as noted *supra*, Plaintiff's motion to appoint *pro bono* counsel pursuant to 28 U.SC. § 1915(e)(1) has been denied. Thus, Plaintiff's Sixth Amendment claims are dismissed.

**C. Count III: Title VII & ADA**

"The prima facie elements of a Title VII discrimination claim are: (1) the plaintiff is a member of a protected class; (2) she was qualified for the position she sought to attain or retain; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Goode v. N.J. Dep't of Corr.*, No. 11-06960, 2015 WL 1924409, at *8 (D.N.J. Apr. 28, 2015) (citing *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)). The elements of an ADA claim are similar. "In order to make out a prima facie case of disability discrimination under the ADA, [a plaintiff] must establish that she (1) has a disability, (2) is a qualified individual, and (3) has suffered an adverse employment action because of that disability." *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006) (internal quotations and citations omitted).

Plaintiff brings Title VII and ADA claims on the grounds that "Defendants described and

classified [her] to employers as an African American woman who is an incompetent troublemaker with a criminal record and a Bipolar person" and that she was denied potential employment as a result. *See* Compl. ¶¶ 62–66. Because Plaintiff's allegations appear to assert a failure-to-hire claim, Plaintiff must also specifically show "under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to plaintiff to fill the position." *Suri v. Foxx*, 69 F. Supp. 3d 467, 478 (D.N.J. 2014) (quoting *Lula v. Network Appliance,* 255 F. App'x 610, 611–12 (3d Cir. 2007)). Still, even assuming that Plaintiff qualifies for protected status under both Title VII and the ADA, the Complaint is unclear as to which employers denied Plaintiff employment, what grounds were stated for the denials, or whether those employers filled the relevant positions with individuals of similar qualifications. More fundamentally, Plaintiff's Complaint is unclear as to which employers may be proper defendants for her failure-to-hire claim.[3] Plaintiff states that Defendants sought "to exclude her from employment in New Jersey, Pennsylvania, and throughout the entire United States of America." *See* Compl. ¶ 63. However, Plaintiff fails to allege any information about the specific employment opportunities she lost or any information to support an inference that those opportunities were lost because of a protected characteristic such as race or disability. Thus, Plaintiff's employment discrimination claims under Title VII and the ADA are dismissed.

### D. Count IV: USERRA

The USERRA prohibits employment discrimination on the basis of military service. The Act specifically provides:

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment,

---

[3] Notably, Ms. Scheel is not a proper defendant for Plaintiff's employment discrimination claims as "Congress did not intend to hold individual employees liable under Title VII." *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996).

> retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. § 4311(a). "[A]n employee making a USERRA claim of discrimination [ ] bear[s] the initial burden of showing by a preponderance of the evidence that the employee's military service was a substantial or motivating factor in the adverse employment action." *Carroll v. Del. River Port Auth.*, 843 F.3d 129, 131 (3d Cir. 2016) (internal quotations and citation omitted). "If the plaintiff meets his burden, the burden of proof then shifts to the employer, who must prove that it would have taken the adverse action for non-discriminatory reasons, regardless of the employee's military service." *Murphy v. Radnor Twp.*, 542 F. App'x 173, 177 (3d Cir. 2013).

Here, Plaintiff does not appear to allege facts supporting a cause of action under the USERRA. Plaintiff states that "[o]n August 2, 2017 [she] received an email from the New Jersey Civil Service Commission that the NJ Department of Military Affairs did not have her Veteran's status on file in their system and her Veteran's preference would not be counted in her [employment] application." *See* Compl. ¶ 68. Based on this email Plaintiff contends "the State of New Jersey had been denying her Veteran benefits of using her State Veteran's Preference" in the course of applying for jobs. *See id.* Plaintiff further alleges that she had been previously granted "Veterans Preference status for future employment with the State." *Id.* ¶ 70. Without more, Plaintiff's dispute with the State of New Jersey does not amount to USERRA claim. Importantly, Plaintiff does not allege that she suffered any adverse employment action due to her military service. Rather, Plaintiff's allegations against the State of New Jersey relate solely to a preference provided to veterans in applying for civil service positions and documentation associated with that preference. *See* N.J.A.C. 4A:5-2.1. To the extent that the State of New Jersey did not have proper record of Plaintiff's status as a veteran in August 2017, Plaintiff may wish to contact the New Jersey Department of Military and Veteran Affairs for clarification. But the allegations set forth in the Complaint do not indicate

that Plaintiff suffered discrimination by any potential employer, including the State of New Jersey, on the basis of her military service, as required to state a claim under the USERRA. Accordingly, Plaintiff's claim is dismissed.

### E. Count V: FTCA

Plaintiff asserts FTCA claims against both the USDOL and the USDOJ. *See* Compl. ¶¶ 75–83. Specifically, Plaintiff claims the USDOL "acted negligently" in allowing Ms. Scheel to make untrue and unjustified statements about Plaintiff to prospective employers and by failing to investigate her "complaints of civil rights and equal employment rights violations." *See id.* ¶¶ 76, 80. Plaintiff also claims that the USDOJ attorneys who represented the USDOL and Ms. Scheel in the E.D. Pa. Action "acted negligently and tortious in their written statements to the court" and "acted unethical in their dealings" with Plaintiff's attorney. *See id.* ¶¶ 81–82.

"The [FTCA] allows a plaintiff to bring certain state-law tort suits against the Federal Government." *Brownback v. King*, 141 S. Ct. 740, 745 (2021) (citing 28 U.S.C. § 2674). However, pursuant to 28 U.S.C. § 2680(h), the FTCA's wavier of sovereign immunity does not apply to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit or interference with contractual rights" unless certain claims relate to acts or omissions made by "investigative or law enforcement officers." *See* 28 U.S.C. § 2680(h). Here, the USDOL cannot be held liable for the alleged false statements made by Ms. Scheel as Ms. Scheel is not alleged to have been an investigative or law enforcement officer.

Nor does Plaintiff state a claim against the USDOL for its alleged failure to investigate her purported complaints to the agency. The discretionary function exception limits the FTCA's waiver of sovereign immunity by "eliminating jurisdiction for claims based upon the exercise of a discretionary function on the part of an employee of the government." *Baer v. United States*, 722 F.3d 168, 172 (3d Cir. 2013) (citing 28 U.S.C. § 2680(a)). To determine whether the discretionary

function exception applies, courts employ a two-part test. "First, a court must consider whether the action is a matter of choice for the acting employee." *Id.* (citing *Berkovitz v. United States,* 486 U.S. 531, 536 (1988)). "Second, a court must determine whether the judgment exercised is of the kind that the discretionary function exception was designed to shield." *Id.* (internal quotations and citations omitted). Generally, "[d]ecision making as to investigation and enforcement, particularly when there are different types of enforcement action available, are discretionary judgments." *Bernitsky v. United States*, 620 F.2d 948, 955 (3d Cir. 1980); *see Vickers v. United States*, 228 F.3d 944, 951 (3d Cir. 2000) (stating that "the discretionary function exception protects agency decisions concerning the scope and manner in which it conducts an investigation so long as the agency does not violate a mandatory directive"). Here, Plaintiff alleges that the USDOL explained to her in an October 15, 2019 letter that it did not have authority to investigate the employers about which Plaintiff complained. *See* Compl. ¶ 80. While Plaintiff may disagree with the USDOL's assessment, without more, the USDOL's decision to not move forward with the investigation desired by Plaintiff falls within the discretionary function exception to the FTCA, and thus Plaintiff's claim must be dismissed.

As for Plaintiff's FTCA claim against the USDOJ, Plaintiff alleges that her attorney in the E.D. Pa. Action "was unethically intimidated by USDOJ Attorneys representing USDOL and USDOL Supervisor Scheel to amend the original December 7, 2017 lawsuit document." *See* Compl. ¶ 20. Plaintiff also alleges that the government attorneys who worked on the E.D. Pa. Action were "negligent and tortious" in their statements to the district court. *See* Compl. ¶¶ 81–82. First, as the Federal Defendants point out, unethical behavior by opposing counsel is not a recognized tort so as to support a cause of action under the FTCA. *See* Fed. Mot. at 18. Second, to the extent Plaintiff's claim against the USDOJ arises from the contents of the McSwain Certification, claims "arising out of . . . libel, slander, misrepresentation [or] deceit" fall within an exception to the FTCA's waiver of

sovereign immunity. *See* 28 U.S.C § 2680(h). Moreover, as explained above, Plaintiff's conclusory allegations regarding the McSwain Certification are insufficient to support a claim. Thus, Plaintiff's FTCA claim against the USDOL and USDOJ is dismissed.

### F. Count VI: APA

Plaintiff asserts that the USDOL violated the APA by allegedly "blacklisting" Plaintiff from employment opportunities and "remov[ing] her Veterans benefits from employment hiring" without notice or justification. *See* Compl. ¶¶ 84–88. However, because Plaintiff is unable to point to a reviewable final agency action, this Court lacks jurisdiction over Plaintiff's claim.

"Under the APA, 'final agency action[s] for which there is no other adequate remedy in a court are subject to judicial review.'" *Jie Fang v. Dir. U.S. Immigration & Customs Enf't*, 935 F.3d 172, 180 (3d Cir. 2019) (citing 5 U.S.C. § 704)). "For an agency action to be final under the APA, the action must mark the consummation of the agency's decision-making process, and the action must determine a right or obligation." *Id.* (internal quotations and citation omitted). Courts in the Third Circuit review "the following factors to determine whether an agency action is final: 1) whether the decision represents the agency's definitive position on the question; 2) whether the decision has the status of law with the expectation of immediate compliance; 3) whether the decision has immediate impact on the day-to-day operations of the party seeking review; 4) whether the decision involved a pure question of law that does not require further factual development; and 5) whether immediate judicial review would speed enforcement of the relevant act." *Naik v. Renaud*, 947 F. Supp. 2d 464, 471 (D.N.J. 2013) (quoting *Ocean Cnty. Landfill Corp. v. U.S. E.P.A. Region II*, 631 F.3d 652, 655 (3d Cir. 2011)). "If there is no final agency action, a court lacks subject matter jurisdiction." *Id.*

Plaintiff's allegations do not indicate any semblance of an agency decision-making process on the part of the USDOL with respect to allegedly "blacklisting" Plaintiff from future employment

or regarding the purported removal of her "Veterans benefits." Absent this critical element, the Court cannot find that either alleged act is reviewable pursuant to the APA. Nor does Plaintiff's Complaint set forth sufficient factual allegations to give rise to the inference that the USDOL was even remotely involved in the alleged removal of Plaintiff's veteran's preference. Indeed, Plaintiff asserts in Count IV that the State of New Jersey was responsible for doing so. Regardless, absent allegations demonstrating a final agency action on the part of the USDOL, this Court lacks subject matter jurisdiction over Plaintiff's claim, and thus the claim is dismissed.

## IV. CONCLUSION

For the foregoing reasons, the motions to dismiss are **GRANTED**; Plaintiff's claims are dismissed without prejudice. Plaintiff may amend her Complaint within 30 days.

Date: February 28, 2023

/s/ Georgette Castner
Hon. Georgette Castner
U.S. District Judge